# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

TOBY LAMB II,

        Petitioner,    :    Case No. 1:19-cv-621

  - vs -                      District Judge Timothy S. Black
                                Magistrate Judge Michael R. Merz

WARDEN,
  Southern Ohio Correctional Facility,

                          :
        Respondent.

## REPORT AND RECOMMENDATIONS

This habeas corpus case, brought *pro se* by Petitioner Toby Lamb II, is before the Court for decision on the Petition (ECF No. 1), the State Court Record (ECF No. 8), the Return of Writ (ECF No. 9), and Petitioner's Reply (ECF No. 11). The Magistrate Judge reference in the case has recently been transferred to the undersigned to help balance the Magistrate Judge workload in the Southern District (ECF No. 12).

**Litigation History**

Lamb was indicted by a Scioto County, Ohio, grand jury on charges of aggravated robbery with a firearm specification in violation of Ohio Revised Code § 2911.01(A)(1)/2911.01(C); failure to comply with the order or signal of a police officer in violation of Ohio Revised Code §

1

2921.331(B)/2921.331(C)(5)(a)(ii); and receiving stolen property in violation of Ohio Revised Code § 2913.51(A)/2913.51(C).  After Lamb rejected an on-the-record plea offer, the case was tried in March 2017 and the jury convicted him of aggravated robbery with the firearm specification and failure to obey the order or signal of a police officer; the receiving stolen property charge was dismissed.  The trial court sentenced Lamb to an aggregate prison term of fifteen years.

With new counsel, Lamb appealed to the Ohio Fourth District Court of Appeals, raising the following assignments of error:

> 1. Defendant's trial counsel was ineffective in failing to properly advise defendant of a plea offer made by the state of Ohio.
>
> 2. Appellant's convictions for (a) aggravated robbery and (b) failure to comply were against the manifest weight and sufficiency of the evidence.
>
> 3. The trial court abused its discretion in admitting improper hearsay evidence from detective Jodi Conkel and/or failing to provide a proper curative instruction.
>
> 4. Appellant's speedy trial rights under O.R.C. 2945.71 were violated as a matter of law.
>
> 5. A mistrial should have been declared due to improper selection of the alternate juror at trial.
>
> 6. Appellant was denied his Sixth Amendment rights to a fair trial when his *pro se* motions went unaddressed.
>
> 7. Cumulative errors committed during the appellant's trial deprived him of a fair trial and require reversal of his convictions.

(Appellant's Brief, ECF No. 8, PageID #95-118).  The Fourth District overruled all of these assignments of error and affirmed the trial court.  *State v. Lamb* 2018-Ohio-1405 (Ohio App. 4th Dist. Apr. 10, 2018), appellate jurisdiction declined, 153 Ohio St. 3d 1462 (2018).

During the pendency of his direct appeal, Lamb filed *pro se* a petition for post-conviction relief under Ohio Revised Code § 2953.21, pleading one claim: "A meaningful right to effective assistance of counsel during plea negotiations is demanded by the Sixth Amendment and is a critical component of the administration of criminal law." (Petition, State Court Record, ECF No. 8, Ex. 32, PageID 198, et seq.) The trial court found it lacked jurisdiction to consider the petition while the direct appeal was pending and dismissed it on January 3, 2018. *Id.* at Ex. 33. Lamb's appeal from that order was dismissed as untimely and for failure to perfect[1] the appeal (Decision and Judgment Entry, ECF No. 8, Ex. 38). Lamb did not appeal to the Supreme Court of Ohio, but instead filed his habeas corpus petition in this case on July 17, 2019, pleading the following grounds for relief:

> **Ground One**: Ineffective counsel
>
> **Supporting Facts:** Appellant informed trial and appellant [sic] counsel Detective Jodi Conkel committed perjury under oath in her testimony that appellant visited Ms. Foster while she was in jail in Dayton, Ohio. Appellant never visited Ms. Foster and neither counsel raised the issue at trial or appeal even after appellant informed them. A small investigation into my defense would have proved otherwise, he failed to correct error.
>
> **Ground Two**: Ineffective assistance of counsel
>
> **Supporting Facts:** March 7, 2017 trial counsel advised appellant he was facing a maximum of 14 years. Trial counsel produced a piece of paper which he said was a plea agreement of 3 years and 9 months, also that appellant had until March 13, 2017 to decide. Unrelated to the plea offer trial counsel informed appellant the 2nd indictment was being dismissed, Count 3 Receiving Stolen Property on this indictment was being dismissed as well as Count 1 Aggravated Robbery was being dropped to a Felony 2 which totals a maximum sentence of 14 years if convicted. Appellant called trial counsel the night of March 7, 2017 from a document [sic] jail phone

---

[1] To perfect an appeal, an appellant must file or cause the filing of certain documents with the court of appeals to complete the record for the appeal.

> to accept plea agreement and trial counsel never accepted the call. Appellant also had a family member call and attempt to contact him. Trial counsel seen appellant March 12, 2017 and informed him the offer was gone.
>
> **Ground Three**: Ineffective assistance of counsel
>
> **Supporting Facts**: Appellate counsel's performance is well below an objective level of reasonable representation for arguing meritless issues to the court. Appellant informed trial counsel March 6, 2017 he was not brought to trial within speedy trial limits in which counsel went into the chambers and advised appellant he was wrong. When in fact after trial counsel calculated the time appellant spent in Montgomery County jail and realized his error then said "it was nothing we could do."
>
> **Ground Four**: Cumulative errors
>
> **Supporting Facts**: Counsel failed appellant by not interviewing witnesses, appellant, and not investigating the case. By allowing Detective Conkel to perjure herself in her testimony on her blatant violation of appellant's due process. The trial court committed multiple errors that denied appellant a fair and just trial.

Petition, ECF No. 1 PageID 6-11.)

## Analysis

All four of Petitioner's Grounds for Relief raise claims of ineffective assistance of trial counsel and/or ineffective assistance of appellate counsel.

The governing standard for ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel was

> not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687. In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice. *Berghuis v. Thompkins*, 560 U.S. 370, 389 (2010), citing *Knowles v. Mirzayance*, 556 U.S.111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome." 466 U.S. at 694. See also *Darden v. Wainwright*, 477 U.S. 168, 184 (1986), citing *Strickland, supra.; Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998), citing *Strickland, supra*; *Blackburn v. Foltz,* 828 F.2d 1177, 1180 (6th Cir. 1987), quoting *Strickland*,

5

466 U.S. at 687. "The likelihood of a different result must be substantial, not just conceivable." *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011), quoting *Harrington v. Richter*, 562 U.S. 86, 111-12 (2011).

> In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. See *Wong v. Belmontes,* 558 U.S. 15, 27, 130 S. Ct. 383, 175 L. Ed. 2d 328 (2009) (per curiam); *Strickland*, 466 U.S., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674. Instead, *Strickland* asks whether it is "reasonably likely" the result would have been different. Id., at 696, 104 S. Ct. 2052, 80 L. Ed. 2d 674. This does not require a showing that counsel's actions "more likely than not altered the outcome," but the difference between *Strickland's* prejudice standard and a more-probable-than-not standard is slight and matters "only in the rarest case." Id., at 693, 697, 104 S. Ct. 2052, 80 L. Ed. 2d 674. The likelihood of a different result must be substantial, not just conceivable. Id., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674.

*Harrington v. Richter,* 562 U.S. 86, 111-112 (2011).

The *Strickland* test applies to appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Burger v. Kemp,* 483 U.S. 776 (1987). To evaluate a claim of ineffective assistance of appellate counsel, then, the court must assess the strength of the claim that counsel failed to raise. *Henness v. Bagley*, 644 F.3d 308 (6th Cir. 2011), *citing Wilson v. Parker*, 515 F.3d 682, 707 (6th Cir. 2008). Counsel's failure to raise an issue on appeal amounts to ineffective assistance only if a reasonable probability exists that inclusion of the issue would have changed the result of the appeal. *Id.*, *citing Wilson.*

Applying these standards, the Court evaluates Lamb's four claims of ineffective assistance, as well as the claim of trial court error made under the Ground Four.

6

**Ground One: Ineffective Assistance: Failure to Confront Jodi Conkel About Lamb's Visiting Danielle Foster in the Montgomery County Jail**

In his First Ground for Relief, Lamb asserts he told both his trial attorney and his appellate attorney that Detective Jodi Conkel perjured herself when she claimed that Lamb visited Foster in the Montgomery County Jail. Neither attorney used this information in Lamb's defense, which he asserts was ineffective assistance of counsel.

The Fourth District Court of Appeals acknowledged that one of the purported facts to which Detective Conkel testified is that she interviewed co-defendant Danielle Foster at the Montgomery County Jail[2]. *State v. Lamb, supra,* at ¶ 26. Lamb claims this testimony was perjured, presumably meaning to claim that Conkel never visited Foster at the jail.

Intentional use by the State of perjured testimony violates a defendant's constitutional rights. *Napue v. Illinois*, 360 U.S. 264, 269 (1959). Therefore failure to raise a *Napue* claim, where there is a good faith basis for it, could constitute ineffective assistance of counsel if the failure was prejudicial to Lamb's case.

Clearly no *Napue* claim was raised at trial or on appeal.

In his Reply, Lamb references *pro se* motions he filed in the trial court. One was a motion for new trial which does not raise a *Napue* claim (State Court Record, ECF No. 8, Ex. 16). The other two were acknowledged by the Fourth District in a footnote:

> Despite being represented by counsel, Appellant filed two pro se
> motions prior to trial, including a motion to suppress and a motion

---

[2] There are record references to "jail in Dayton." The Court takes judicial notice that the only jail in Dayton, Ohio, is the Montgomery County Jail.

> for an evidentiary hearing. These motions were not disposed of until
> the trial court struck them from the record after the trial.

*State v. Lamb,* 2018-Ohio-1405, ¶ 7, note 1.  Those motions are not included in the State Court Record filed by Respondent, but they were properly stricken from the record by the trial court because, as a represented party, Lamb did not have the right to file motions *pro se* (Entry, State Court Record, ECF No. 8, Ex. 19, applying this principle to the *pro se* Motion for New Trial.) Lamb has not shown that he raised his *Napue* claim in either of these motions or what relevance the motions would have had to such a claim.

Nothing appears in the record to show that Conkel perjured herself or that Lamb's trial attorney knew of the perjury.  Therefore this claim, either as a direct *Napue* claim or as a claim of ineffective assistance of trial counsel for failure to raise a *Napue* claim, could not have been brought on direct appeal.  Under Ohio law, the Fourth District on direct appeal was limited to consideration of claims based on the appellate record.  Therefore appellate counsel did not provide ineffective assistance by failure to raise the claim on direct appeal; whatever Lamb may or may not have told him about Conkel was not in the record and could not form the basis of an assignment of error.

Because this perjury claim is based on evidence that is outside the appellate record, Lamb was obliged to raise it in a petition for post-conviction relief.  *State v. Perry*, 10 Ohio St. 2d 175 (1967).  Although he filed such a petition, he did not raise either a perjury claim or an ineffective assistance of trial counsel claimed based on the alleged perjury in that Petition; his Affidavit attached to the Petition makes no mention of having told his trial attorney that Detective Conkel perjured herself (Motion to Vacate under Ohio Revised Code § 2953.21, State Court Record, ECF No. 8, Ex. 32).

8

Lamb never tells this Court how he knows that Conkel perjured herself. Obviously he was not present with Danielle Foster in jail to observe who her visitors were; indeed, he claims the perjury consists in testifying he was ever there, much less that he was there at the time of any interview by Conkel. In lieu of pointing to any evidence on this point presented to the state courts, Lamb actually asks this Court to contact the Montgomery County Jail for proof he never visited Foster (Reply, ECF No. 11, PageID 593). A habeas court is not permitted to engage in investigation on behalf of litigants. Even if Lamb himself presented the visitor logs from Montgomery County Jail, this Court could not consider them because they were never presented to the state courts. *Cullen v. Pinholster*, 563 U.S. 170 (2011).

The procedural default doctrine in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional rights claim he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982). "Absent cause and prejudice, 'a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review.'" *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000), quoting *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*,

9

456 U.S. at 110; *Wainwright*, 433 U.S. at 87.

> [A] federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule. E.g., *Beard v. Kindler*, 558 U.S. 53, 55, 130 S.Ct. 612, 175 L.Ed.2d 417 (2009). This is an important "corollary" to the exhaustion requirement. *Dretke v. Haley*, 541 U.S. 386, 392, 124 S.Ct. 1847, 158 L.Ed. d 659 (2004). "Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address" the merits of "those claims in the first instance." *Coleman* [*v. Thompson*], 501 U.S. [722,] 731-732, 111 S.Ct. 2546, 115 L.Ed.2d 640 [(1991)]. The procedural default doctrine thus advances the same comity, finality, and federalism interests advanced by the exhaustion doctrine. See *McCleskey v. Zant*, 499 U.S. 467, 493, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991).

*Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017).

> "A claim may become procedurally defaulted in two ways." *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). First, a claim is procedurally defaulted where state-court remedies have been exhausted within the meaning of § 2254, but where the last reasoned state-court judgment declines to reach the merits because of a petitioner's failure to comply with a state procedural rule. *Id*.
>
> Second, a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule. *Id*.

*Lovins v. Parker*, 712 F.3d 283, 295 (6th Cir. 2013).

A petitioner can fail to meet procedural requirements in two ways:

> First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court. If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.

10

> Second, a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's ordinary appellate review procedures. If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted.

*Smith v. Warden, Toledo Corr. Inst.*, 2019 U.S. App. LEXIS 18196 * 19 (6th Cir. Jun. 18, 2019), quoting *Lundgren v. Mitchell*, 440 F.3d 754, 806 (6th Cir. 2006)).

Because Lamb never presented to the state courts a claim that trial counsel was ineffective for failure to present the Conkel perjury claim and now has no Ohio forum in which he could present that claim, his First Ground for Relief is procedurally defaulted and should be dismissed with prejudice on that basis.

**Ground Two: Ineffective Assistance of Counsel in Plea Negotiations**

In his Second Ground for Relief, Lamb asserts he received ineffective assistance of trial counsel in plea negotiations because, having presented a plea offer which was acceptable to Lamb, his trial attorney then was unavailable to obtain Lamb's acceptance in time to convey that acceptance to the prosecutor before the offer expired.

Lamb's First Assignment of Error on direct appeal was also about ineffective assistance of counsel in plea bargaining. The Fourth District decided it as follows:

> [*P10] In his first assignment of error, Appellant contends that his trial counsel was ineffective in failing to properly advise him of a plea offer made by the State of Ohio. More specifically, Appellant argues that a plea offer was discussed the morning of the first day of trial which involved him pleading to second degree felony robbery in exchange for a sentence of three years and nine months. Appellant contends he advised his counsel he wanted to "sleep on it" but that

11

when the trial resumed a week later with a different judge, the offer was no longer available. Thus, Appellant does not claim his counsel failed to advise him of the terms of the plea offer, but rather that his counsel failed to advise him of the time limit in which to accept the plea offer. The State denies such an offer was made. Instead, the State contends that two formal offers were made and put on the record, both of which were rejected by Appellant, and that neither of them involved a sentence of three years and nine months or were made the morning of trial.

[Paragraphs 11, 12, 13, and 14 discuss the general legal standards for effective assistance in plea negotiations.]

[*P15] Here, a review of the record reveals that two formal offers were made by the State and rejected by Appellant. There is no indication from the record before us that an offer involving a sentence of three years and nine months was ever made by the State. The only reference to such an offer appears in the sentencing hearing transcript and is in the form of an allegation made by Appellant himself. The State denies any offers, other than the two formal offers that were put on record, were made. Further, even if there was evidence that such an offer was made and that Appellant's trial counsel's performance was deficient in failing to advise Appellant of the time limit in which to accept the offer, Appellant has failed to show he was prejudiced as a result. Appellant has not alleged, either at the sentencing hearing when he first raised this issue, or on appeal, that he would have actually accepted the plea offer he describes. "To establish prejudice, appellant must show he would have accepted the plea offer had it been communicated to him." *State v. Hicks,* 12th Dist. Butler No. CA2002-08-198, 2003-Ohio-7210, ¶ 15; citing *Haley v. United States* (C.A.6, 2001), 3 Fed. Appx. 426, 2001 WL 133131, certiorari denied, 534 U.S. 1031, 122 S. Ct. 568, 151 L. Ed. 2d 441.

[*P16] Additionally, as explained in *State v. Moore,* 5th Dist. Stark No. 2016CA00094, 2016-Ohio-7380, ¶ 21:

> "* * * it is well settled a trial court enjoys wide discretion in deciding whether to accept or reject a negotiated plea agreement. *Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971); *Akron v. Ragsdale,* 61 Ohio App.2d 107, 109-10, 399 N.E.2d 119 (9th Dist.1978). Indeed, a defendant has no absolute right to have a guilty plea accepted. *Santobello* at 262, 92 S.Ct. 495, 30 L.Ed.2d

12

> 427; *Lafler v. Cooper,* 566 U.S. [156], 132 S. Ct. 1376, 1395, 182 L. Ed. 2d 398 (2012)."
>
> Thus, consistent with the reasoning in Moore, Appellant has failed to present any evidence the trial court would have accepted the plea bargain. Therefore, even if counsel's performance was deficient, Appellant has not established he was prejudiced by counsel's performance. Accordingly, we find no merit to Appellant's first assignment of error and it is overruled.

*State v. Lamb*, 2018-Ohio-1305.

In his Reply, Lamb argues that the plea offer does appear on the record. However, the only place in the record cited for such an offer is Lamb's statement at the time of sentencing that such an offer had been conveyed to him the morning of trial and, as the Fourth District found, he had asked "to sleep on it."

The Magistrate Judge has read the transcript of the sentencing hearing and finds the following facts based on that review:

Sentencing occurred on April 4, 2017. The prosecutor, Mr. Tieman, was called upon to make a recommendation of sentence on behalf of the State. He referred to the Sentencing Memorandum which had been filed and particularly noted Lamb's prior convictions for drug felonies. When Tieman asked for a sentence of ten years for the aggravated robbery, Lamb interrupted by saying "Damn." (Transcript, State Court Record, ECF No. 8-1, PageID 504). After Tieman finished recommending a total sentence of fifteen years, Lamb interrupted again by saying "He was offering me three years and nine months (inaudible)". *Id.* at PageID 505.

Lamb's trial attorney, Mr. Meadows, responded by arguing that the State had made a formal offer of six years prior to trial and that anything more than that was punishing Lamb for

13

exercising his trial right. *Id.* at PageID 505-06. The judge then invited Lamb to give his pre-sentence allocution, whereupon he stated:

> Prior to you coming in here, he offered me three years, nine months, and I asked him if I could sleep on it. This was when Marshall was still here. I guess they agreed or I didn't know they didn't agree. We come back to court, was it the 13th and the deal was off the table and there was no deal.

*Id.* at PageID 506. He went on to claim the trial was unfair for a number of reasons and then stated

> I didn't even get a fair trial that - -from the - - from the time that he offered the deal and took it off the table I guess a minute later. He told me I could sleep on it. I asked him could I sleep on it and talk to my family first before I made the decision. It was the three years and nine months, and the next thing I know Marshall was gone and you're here.

*Id.* at PageID 508.

Offered an opportunity to respond, Mr., Tieman stated:

> Briefly, with regard to the plea offers, Mr. Lamb did state that the offer was dropping it to a felony two. The recommended sentence on that was based on that plea offer of the felony two. He now stands convicted of felony one with a gun spec, which is a mandatory three years on top of whatever you sentence him on the felony one, plus the Failure to Comply, which is mandatory, consecutive.

*Id.* at PageID 509. After that neither Lamb nor his attorney said anything and the court imposed the sentence of fifteen years.

The Magistrate Judge agrees with the Petitioner that this statement by Tieman is an acknowledgment that the State, before trial began, made an informal offer that if Lamb would plead guilty to a reduced charge at the felony two level (presumably robbery), it would recommend a sentence of three years and nine months.

On December 13, 2016, Mr. Tieman recited prior plea negotiations for the record: the State

14

would allow Lamb to plead guilty to robbery, dismiss all other charges, and recommend a sentence of six years, noting that Lamb could face up to 16.5 years in one of the pending cases and forty-two years in the other (Transcript, ECF No. 8-1, PageID 239.) Mr. Meadows confirmed that he had conveyed the offer to Lamb who rejected it and stood on his trial rights. *Id.* The State rejected a counter offer of three years. *Id.*

The record does not show and Lamb does not claim that he ever stopped "sleeping on" the plea offer prior to trial. He assumes the prosecutor put an expiration date on the offer and that Meadows never told him of it, but he offers no proof of those crucial facts.

Plea agreements are contractual in nature and are therefore interpreted and enforced in accordance with traditional contract law principles. *United States v. Lukse*, 286 F.3d 906, 909 (6th Cir. 2002). Principles of contract law are generally applicable to the interpretation and enforcement of plea agreements. *United States v. Wells*, 211 F.3d 988, 995 (6th Cir. 2000); *State v. Bethel*, 110 Ohio St. 3d 416 (2006). The Sixth Circuit interprets plea agreements according to traditional contract law principles and construes ambiguities against the government. *United States v. Bowman*, 634 F.3d 357, 360 (6th Cir. 2011).

A fundamental principle of contract law is that the offeror is the master of his offer. Once the prosecutor had made his pre-trial offer of three years and nine months, Lamb was free to accept it. Instead, he asked for time to "sleep on it." There is simply no evidence presented to the Ohio courts that Lamb asked for or the prosecutor agreed to a specific amount of time to keep the offer open. Certainly the Court cannot infer that the State agreed to keep the offer open through trial. By trying the case, the State had expended the resources involved with a trial and taken the risk Lamb would be acquitted. Those are the two principal reasons prosecutors agree to plea

15

agreements in the first place: to conserve trial resources and assure a conviction.

Although the record supports the claim that the three years and nine month deal was offered, there is no proof it was accepted. The fact that Lamb rejected a six-year offer and elected to stand on his trial rights when it was made supports the conclusion of the Fourth District that Lamb has not shown he would have accepted the three years and nine months offer.

Because Lamb certainly knew of the three years and nine months offer as of the time of sentencing, he could have raised it in a proper Ohio Revised Code § 2953.21 petition. However, he procedurally defaulted on that possible remedy by filing his post-conviction petition at a time when the trial court did not have jurisdiction, then again by not properly appealing from the trial court's denial and then again by not appealing at all to the Ohio Supreme Court.

Lamb's Second Ground for Relief is procedurally defaulted and should be dismissed on that basis.


**Ground Three: Ineffective Assistance of Appellate Counsel for Failure to Claim Trial Counsel Was ineffective for Failure to Pursue a Speedy Trial Claim**

In this Third Ground for Relief, Lamb claims he told his trial attorney on March 6, 2017, that he had not been brought to trial within the time limits provided by Ohio's speedy trial statute, Ohio Revised Code § 2945.71. Petitioner's counsel at first said Lamb was wrong and then admitted after trial Lamb was correct. Appellate counsel never raised this claim of ineffective assistance of trial counsel.

In his Reply, Lamb asserts he was apprehended May 16, 2016, which added thirty-two days to the calculation of speedy trial limits (ECF No. 11, PageID 600). Lamb was indicted in

16

November 2015 but not, according to his own account, arrested until May 16, 2016. The case was not tried until March 6, 2017 (Transcript, ECF No. 8-1, PageID 244). Contrary to Lamb's assertion, appellate counsel made a speedy trial claim as the Fourth Assignment of Error on direct appeal and the Fourth District decided it as follows:

> [*P40] In his fourth assignment of error, Appellant contends that his speedy trial rights under R.C. 2945.71 were violated as a matter of law. The State contends that this assignment of error should be overruled because Appellant was brought to trial within speedy trial limits. Based upon the following, however, we disagree with the arguments of both parties.
>
> [*P41] R.C. 2945.73(B) states, "[u]pon motion made at or prior to the commencement of trial, a person charged with an offense shall be discharged if he is not brought to trial within the time required by sections 2945.71 and 2945.72 of the Revised Code." This Court has previously concluded that the statute requires the accused to file a motion to dismiss based upon speedy trial grounds prior to trial. State v. Jones, 4th Dist. Lawrence No. 07CA2, 2008-Ohio-304, ¶ 19; citing State v. Thompson, 97 Ohio App.3d 183, 186-187, 646 N.E.2d 499 (1994); see also State v. Ross, 4th Dist. Ross No. 04CA2780, 2005-Ohio-1888, ¶ 20. Here, Appellant does not argue and there is no evidence in the record indicating that he filed a motion to dismiss based upon speedy trial grounds prior to trial. His failure to do so results in a waiver of the issue on appeal. Id.; see also State v. Talley, 5th Dist. Richland No. 06CA93, 2007-Ohio-2902 (refusing to conduct plain error analysis when defendant failed to file a motion to dismiss on speedy trial grounds); State v. Hurst, 4th Dist. Washington No. 08CA43, 2009-Ohio-3127, ¶ 52; State v. Ross, 4th Dist. Ross No. 04CA2780, 2005-Ohio-1888, ¶ 19.
>
> [*P42] Accordingly, based upon the foregoing reasons, we hereby overrule Appellant's fourth assignment of error.

*State v. Lamb*, 2018-Ohio1405. Thus under Ohio law a speedy trial claim must be made by motion to dismiss prior to trial and no such motion was made here. Because no such motion was made, if Petitioner could show the motion would have been meritorious, he would have a good claim of ineffective assistance of trial counsel for failure to make the motion and a good claim of ineffective

17

assistance of appellate counsel for failure to raise the trial attorney's omission.

However, Lamb had never properly presented either one of these ineffective assistance of counsel to the Ohio courts. He did not make this claim of ineffective assistance of trial counsel at all when he filed his Petition for post-conviction relief (Petition, State Court Record ECF No. 8, Ex. 32). Nor has he ever filed an application to reopen the direct appeal under Ohio R. App. P. 26(B), which is the sole forum for raising claims of ineffective assistance of appellate counsel under Ohio law. Because there remain no available remedies for these two claims under Ohio law, they are barred by Lamb's procedural default in presenting them to the state Courts. Ground Three should be dismissed as procedurally defaulted.

**Ground Four: Cumulative Error**

In his Fourth Ground for Relief, Lamb appears to be claiming that both trial and appellate counsel made errors of ineffective assistance which, taken cumulatively, entitle him to relief. In the last sentence he makes a conclusory claim that multiple trial court errors also entitle him to relief.

Individual claims of either ineffective assistance or trial court error cannot be accumulated to support habeas corpus relief. *Sheppard v. Bagley*, 657 F.3d 338, 348 (6th Cir. 2011), *cert. denied,* 132 S.Ct. 2751 (2011), *citing Moore v. Parker,* 425 F.3d 250, 256 (6th Cir. 2005), *cert. denied sub nom. Moore v. Simpson,* 549 U.S. 1027 (2006); *Hoffner v. Bradshaw*, 622 F.3d 487, 513 (6th Cir. 2010) (quoting *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005)); *Moreland v. Bradshaw*, 699 F.3d 908, 931 (6th Cir. 2012), *cert. denied sub nom. Moreland v. Robinson*, 134 S.

18

Ct. 110 (2013); *Lorraine v. Coyle*, 291 F.3d 416, (6th Cir. 2002).

Lamb's Fourth Ground for Relief is therefore without merit.

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Petition herein be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

August 24, 2020.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal.